UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SADHU SINGH HAMDAD TRUST,

                   Plaintiff,

        - against -

AJIT NEWSPAPER ADVERTISING,
MARKETING AND COMMUNICATIONS,
INC., et al.

               Defendants.
------------------------------------------------------------X

**MEMORANDUM
AND   O R D ER**

04 CV 3503 (CLP)

On August 12, 2004, plaintiff Sadhu Singh Hamdad Trust (the "Trust") filed this action,

alleging claims of trademark and copyright infringement by defendants Ajit Newspaper

Advertising, Marketing and Communications, Inc.,[1] and Darshan Singh Bains,[2] in violation of the

Lanham Act, 15 U.S.C. §§ 1051 et seq.; the Paris Convention for the Protection of Industrial

Property; the Copyright Act of 1976, 17 U.S.C. §§ 101-810, 1001-1010; the Berne Convention

for the Protection of Literary and Artistic Works (the "Berne Convention"); and various state law

statutory provisions.

On March 30, 2007, this Court issued a Memorandum and Order ("Order"), denying

plaintiff's motion for summary judgment on its trademark and state law claims, and granting

---

[1]Defendant Ajit Newspaper Advertising, Marketing and Communications, Inc., is a Canadian corporation now known as "Navsun Holdings Limited" (hereinafter "Navsun"). (See Defendants' Response to Plaintiff's Statement of Undisputed Facts ("Defs.' Resp."); Plaintiff's Rule 56 Statement of Material Facts ("Pl.'s 56 Stmnt") ¶ 2).

[2]Defendant Darshan Singh Bains ("Bains") is the President, Editor-in-Chief and majority shareholder of the *Ajit Weekly*. (Pl.'s 56 Stmnt ¶ 3; Defs.' Resp. at 3; Defendants' Rule 56.1 Statement of Material Facts ("Defs.' 56 Stmnt") ¶ 1).

defendants' motion for summary judgment on all claims except for plaintiff's claim of copyright infringement. That claim was denied without prejudice pending the submission of supplemental paperwork addressing plaintiff's claimed copyright ownership under the laws of India. Having now received the parties' additional submissions, the Court denies both plaintiff's and defendants' cross-motions for summary judgment on plaintiff's sole remaining claim of copyright infringement.

## FACTUAL BACKGROUND

The underlying facts are set forth in this Court's earlier Memorandum and Order, dated March 30, 2007 ("March Order"). For purposes of this motion, the salient facts are as follows:

In the Punjab region of India, plaintiff Trust publishes and owns a daily newspaper, the *Ajit Daily*. (Pl.'s 56 Stmnt ¶ 1; Defs.' Resp. at 2). The parties do not dispute that the *Ajit Daily* began publication in India on November 1, 1955, registered its name "Ajit" in accordance with Indian newspaper law, and has continued to publish to date without interruption. (Pl.'s 56 Stmnt ¶ 5; Defs.' Resp. at 3).

Indeed, defendants concede that there is evidence that when plaintiff began operations in 1955, it filed a registration in India pursuant to the Press & Registration Books Act, 1867, and the Press & Regulation of Newspapers (Central) Rules of 1956. (Defs.' Resp. at 8; Pl.'s 56 Stmnt ¶ 14). Although the Trust argues that this registration was sufficient to protect its copyrights from infringement, defendants disagree, contending that this registration is not the equivalent of a copyright registration, and noting that plaintiff only recently complied with the requirements of copyright registration in India. (Defs.' Resp. at 8).

2

Defendant Navsun publishes a free weekly newspaper called the *Ajit Weekly*, which is distributed in the United States, Canada, the United Kingdom and Europe, where there are substantial expatriot Punjabi populations. (Pl.'s 56 Stmnt ¶¶ 25, 42; Defs.' 56 Stmnt ¶¶ 2, 4, 8, 12). Defendants began in 1997 to distribute the *Ajit Weekly* in New York, New Jersey and Connecticut, followed by California in 1998. (Defs.' 56 Stmnt ¶¶ 4-6; Pl.'s 56 Stmnt ¶¶ 35, 39; Defs.' Resp. at 16-17). On November 23, 1999, defendants obtained U.S. Registration No. 2,294,117 for the trademark "The Ajit," in stylized letters, for "newspapers printed in Indian regional language." (Defs.' 56 Stmnt ¶ 13).

The Trust alleges that defendants deliberately copied the *Ajit Daily's* name and masthead logo, including a similar color scheme, in order to reap the benefits of an unwarranted and false association with the *Ajit Daily*. (Pl.'s 56 Stmnt ¶ 28). Plaintiff claims that the term "Ajit," which was the name of a famous Sikh warrior, was chosen specifically to represent the purpose and nature of the newspaper and is otherwise not typically associated with newspapers or printing in general. (Id. ¶ 12). Plaintiff also claims that the *Ajit Daily* has always published under a distinct masthead with a particular logo identified by Punjabi readers as associated with the newspaper. (Id. ¶ 11). Plaintiff alleges that the current masthead and logo, in use since 1984[3] (id. ¶¶ 11, 13; Defs.' Resp. at 7-8), consists of two distinct features: (1) the top hook of the word "Ajit" in the logo is flattened and extends further to the left of the other characters than in standard Punjabi script; and (2) the bottom hook on the right-hand corner of the word "Ajit" is cut off to form a flatter, lower edge than is standard. (Pl.'s 56 Stmnt ¶ 13). Plaintiff alleges that because the *Ajit*

---

[3]Defendants note that plaintiff's use of this logo and masthead was limited to India. (Defs.' Resp. at 8).

*Weekly* bears the same name and logo as the *Ajit Daily*, Punjabi readers have in fact confused the *Ajit Weekly* with the *Ajit Daily* and believe that the *Ajit Daily* has shifted its views because the *Ajit Weekly* prints items considered offensive in the Sikh religion and Punjabi culture. (Id. ¶¶ 47-48, 51-53).[4]

Defendants dispute plaintiff's claim that the term "Ajit" is unique, noting that many other Indian newspapers are associated with the name and indeed, the word is not only a common personal name and surname, but is used to sell other products. (Defs.' 56 Stmnt ¶¶ 23-26, 28; Defs.' Resp. at 6-7). Defendants also dispute that the logo is unique or distinctive (Defs.' Resp. at 7-8), suggesting that it is nearly identical to standard Punjabi fonts with "two slight modifications." (Id. at 6, 8).

## PROCEDURAL BACKGROUND

On February 22, 2006, plaintiff filed a motion for summary judgment on its claims under the Lanham Act, the Copyright Act, New York's Anti-Dilution Law, and New York's Anti-Deceptive Trade Practices Law. Defendants cross-moved, arguing that plaintiff was not entitled to either trademark or copyright protection for its logo in the United States, and that in absence of proof of ownership of a distinctive mark, plaintiff could not demonstrate a violation of New York state law.

By Memorandum and Order dated March 30, 2007 ("March Order"), this Court granted

---

[4]Plaintiff concedes that although it learned in the 1990's that defendants were using the Ajit name and logo without authorization, plaintiff refrained from taking legal action at that time because the cost "proved to be prohibitively expensive." (Pl.'s 56 Stmnt ¶ 56).

defendants' motion for summary judgment, dismissing plaintiff's trademark and state law claims. The parties' cross-motions for summary judgment on the claims of copyright infringement were denied without prejudice pending the submission of supplemental paperwork addressing plaintiff's claimed copyright ownership under the laws of India. The parties thereafter submitted supplemental paperwork[5] addressing plaintiff's sole remaining claim of copyright infringement.

For the reasons set forth below, both plaintiff's and defendants' motions for summary judgment on the copyright infringement claim are denied.[6]

---

[5]On May 2, 2007, plaintiff submitted a Supplemental Brief in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Supp. Mem.") and Singh Supplemental Certification. Defendants responded with a Supplemental Brief in Response to Plaintiff's Supplemental Brief and In Support of Defendants' Cross Motion for Summary Judgement on Defendants' Copyright Claim on May 18, 2007 ("Defs.' Supp. Mem."), along with the Second Declaration of William C. Wright ("2d Wright Decl."). Plaintiff thereafter submitted Plaintiff's Reply to Defendants' Supplemental Brief in Support of Defendants' Cross Motion for Summary Judgment on Defendants' Copyright Claim and in Further Support of Plaintiff's Supplemental Brief on May 30, 2007 ("Pl.'s Supp. Reply").

[6]At first blush, it may appear contradictory for the Court to deny plaintiff's trademark claim, yet consider its claim of copyright infringement on the very same logo and masthead. However, trademark and copyright law are distinct in both purpose and registration process. See Warner Bros., Inc. v. Dae Rim Trading, Inc., 677 F. Supp. 740, 760 (S.D.N.Y. 1988). Trademark protection is no defense to copyright infringement, because "although the grant of a service mark registration entitles the registrant to certain rights and privileges under the Trademark Act . . . the right to infringe another's copyright is not one of those." Boyle v. United States, 200 F.3d 1369, 1373-74 (Fed. Cir. 2000). Accordingly, "possession of a service mark is not a defense to infringement of a valid copyright." Id. at 1375; see also Nova Wines, Inc. v. Adler Fels Winery LLC, 467 F. Supp. 2d 965, 983 (N.D. Cal. 2006) (noting the converse, that where particular copyrighted images of Marilyn Monroe were incorporated into a wine label, "a valid copyright does not entitle the copyright holder to infringe on another's trade dress rights").

## DISCUSSION

### A. Motion for Summary Judgment

#### 1) Standards

As noted in the Court's March Order, the burden of establishing that there is no genuine issue of material fact in dispute rests with the moving party, see Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990), and the Court should not grant summary judgment unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976) (internal citations omitted); see also Auletta v. Tully, 576 F. Supp. 191, 194-95 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984) (stating that summary judgment should be granted only if "it is clear that the requirements of Fed. R. Civ. P. 56 have been satisfied"). Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Any "'inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

### B. Plaintiff's Copyright Claim

Plaintiff alleges that defendants have infringed on plaintiff's rights and violated copyright

law by copying and using the *Daily Ajit* masthead and logo without authorization. (Pl.'s Mem.[7] at 13).

Section 501(a) of the Copyright Act, 17 U.S.C. §§ 101-1101 (1997) (the "Act"), proscribes the unauthorized copying of original works of authorship that belong to an owner holding exclusive copyright to such work. 17 U.S.C. §§ 501(a); see Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1113 (2d Cir. 1986). To prove a violation of the Act, the plaintiff must establish: (1) that it owns a valid copyright, and (2) that defendants have engaged in the unauthorized copying of that protected work. See Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005); Fonar Corp v. Domenick, 105 F.3d 99, 103-04 (2d Cir.), cert. denied, 522 U.S. 908 (1997); Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 455 (2d Cir. 1989); Eckes v. Card Prices Update, 736 F.2d 859, 861 (2d Cir. 1984).

Plaintiff relies on Article 5 of the Berne Convention to support its argument that although it has not registered its logo in the United States, it is nonetheless entitled to the same protections in the United States because it legally registered its masthead logo in India. (Id.) The exclusive source of protection for foreign works in the United States is the Copyright Act. See Bridgeman Art Library, Ltd. v. Corel Corp., 36 F. Supp. 2d at 194 (citing 17 U.S.C. § 104(c)). However, "the Copyright Act, as amended by the Berne Convention, extends certain protections to foreign pictorial, graphic, and literary works when "the work is first published in the United States or in a

---

[7]Citations to "Pl.'s Mem." refer to Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment, filed on February 22, 2006.

foreign nation that, on the date of first publication, is a treaty party."[8] 17 U.S.C. § 104. The

Berne Convention "adopts a rule of national treatment," <u>Bridgeman Art Library, Ltd. v. Corel</u>

<u>Corp.</u>, 36 F. Supp. 2d 191, 194 (S.D.N.Y. 1999),[9] and thus, the law that determines the extent of

what is subject to copyright protection is the copyright law of the country in which the

infringement occurred, not that of the country in which the work was first published. <u>See</u> Berne

Convention Art. 5(1)-5(2); <u>see also</u> <u>Murray v. British Broadcasting Corp.</u>, 81 F.3d 287, 290 (2d

Cir. 1996). Under the Berne Convention's national treatment principle, "a foreign copyright

owner is provided in the United States Courts the same protection as a citizen owner." <u>Films by</u>

<u>Jove, Inc. v. Berov</u>, 341 F. Supp. 199, 213 (E.D.N.Y. 2004). <u>See also</u> <u>Itar-Tass Russian News</u>

<u>Agency v. Russian Kurier, Inc.</u>, 153 F.3d 82, 89 (2d Cir. 1998) (noting that the Berne

Convention's "principle of national treatment simply assures that if the law of the country of

infringement applies to the scope of substantive copyright protection, that law will be applied

uniformly to foreign and domestic authors").

    While copyrights that originate in the United States must be registered before the owner

may sue for infringement, <u>see</u> <u>Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.</u>, 354 F.3d 112,

115 (2d Cir. 2003), the Berne Convention does not require the owner of a foreign copyright to

register in the United States before seeking redress for infringement of works originating in

---

    [8]India is a signatory to the Berne Convention. <u>See</u> <u>Living Media India Ltd. v. Parekh</u>
<u>(Harshad)</u>, No. 92 CV 8079, 1994 WL 68193, at *2 (S.D.N.Y. Feb. 28, 1994).

    [9]Article 5 of the Berne Convention provides: "Authors shall enjoy, in respect of works
for which they are protected under this Convention, in countries of the Union other than the
country of origin, the rights which their respective laws do now or may hereafter grant to their
nationals," but the "extent of protection, as well as the means of redress afforded to the author to
protect his rights, shall be governed exclusively by the laws of the country where protection is
claimed." Berne Convention Art. 5(1)-5(2).

foreign nations, such as India, that are signatories to that convention. See Jose Armando Bermudez & Co. v. Bermudez Intern., No. 99 CV 9346, 2000 WL 1225792, at *10 (S.D.N.Y. Aug. 20, 2000) (noting that "[n]o proof of registration is required if the work for which plaintiff seeks protection has been authored in a foreign country covered by an applicable Convention," and that the Berne Convention is such an applicable convention) (citing 17 U.S.C. § 411(a)); see also Alameda Films SA de CV v. Authors Rights Restoration Corp., Inc., 331 F.3d 472, 475 (5th Cir.) (noting that when the United States adopted the Uruguay Round Agreement Act, it "eliminated many of the formalities previously required for copyrighting foreign works in the U.S., including registration and notice"), cert. denied, 540 U.S. 1048 (2003). But see, 17 U.S.C. § 411(a) (stating that "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made. . .") (emphasis added).

However, in order to establish its claim of copyright infringement, plaintiff must first demonstrate ownership of a valid copyright.[10] See Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d at 260; Fonar Corp v. Domenick, 105 F.3d at 103-04; Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d at 455; Eckes v. Card Prices Update, 736 F.2d at 861. The question of whether or not a party has ownership of the copyright in the originating foreign nation is generally established by the laws of that nation. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d at 89-90; but see Films by Jove, Inc. v. Berov, 341 F.

_____

[10]The court in Bridgeman Art Library, Ltd. v. Corel Corp. held that the Berne Convention did not require the courts of the United States to enforce foreign copyrights that did not satisfy the originality requirement set forth in the United States Constitution, and further codified in the Copyright Act at 17 U.S.C. § 102(a). 36 F. Supp. 2d at 195.

Supp. 2d at 213-14 (finding that copyright ownership should be determined by the law of the country of infringement). In Itar-Tass, the Second Circuit noted that in copyright cases there are "two distinct issues - ownership and substantive rights, i.e., scope of protection." Id. at 89-90. The Itar-Tass court considered the issue of ownership of the copyright in question under the laws of Russia in part because it determined that Russia was the state with the most significant relationship to the disputed copyright, given that the works were "created by Russian nationals and first published in Russia." Id. at 90. The court then went on to analyze the substantive rights of the parties under United States law. See id. at 90-92. National treatment merely "assures that the law of the country of infringement applies to the scope of substantive copyright protection . . . uniformly to foreign and domestic authors." Id. (emphasis added). Thus, in the present case, where the disputed work was created by Indian nationals and first published in India, the Court turns to Indian law to determine if plaintiff properly owned a copyright for the Ajit logo and masthead in India. It is United States law, however, that determines whether or not plaintiff's work is subject to protection and whether it has established copyright infringement.

     1) Plaintiff's Claim is Timely

     Before addressing the issue of ownership of a valid copyright, defendants, as an initial matter, assert that the three-year statute of limitations to bring a claim of copyright infringement has run. (Defs.' Mem. at 18). Defendants argue that because the Second Circuit does not recognize the "continuing-infringement" doctrine, plaintiff has lost its opportunity to bring suit even for alleged infringements in the three years prior to filing suit. (Id. at 19 (citing Kregos v. Associated Press, 3 F.3d 656, 662 (2d Cir. 1993), cert. denied, 510 U.S. 1112 (1994)). It well-

established, however, that "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief." Stone v. Williams, 970 F.2d 1043, 1049-1050 (2d Cir. 1992), cert. denied, 508 U.S. 906 (1993); see also Roberts v. Keith, No. 04 CV 10079, 2006 WL 547252, at *3-4 (S.D.N.Y. Mar. 7, 2006). Disallowing the "continuing-infringement doctrine" merely means that "[r]ecovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts." Stone v. Williams, 970 F.2d at 1049-1050; Roberts v. Keith, 2006 WL 547252, at *3-4.

Accordingly, because defendants continue to use the masthead logo in question, plaintiff's claims are not barred for any infringements that occurred within the three-year statute of limitations prior to the filing of this suit.

### 2) Plaintiff's Ownership of a Valid Copyright in India

At the time the parties filed their cross-motions for summary judgment, it was unclear whether or not plaintiff held a valid copyright in the Ajit logo and masthead prior to the time it filed this action. In its initial motion, plaintiff relied principally on the deposition testimony of Mr. Prem Singh, who is Chairman of the Trust. He testified that the Trustees registered the use of the Ajit name, logo and masthead with the Indian Press & Registration Books Act, 1867, and the Press & Regulation of Newspapers (Central) Rules of 1956, "when it began operation in 1955 and 1956 in compliance with Indian laws." (See Pl.'s 56 Stmnt ¶¶ 14, 23). However, plaintiff failed to demonstrate that this registry was designed to provide the type of protection afforded by India's copyright laws, especially given that, according to plaintiff, the masthead presently at issue was not created until long after, in 1984. (Id. ¶¶ 13, 27, 37). Since this registration also

11

formed the basis for plaintiff's trademark claim,[11] and plaintiff submitted a document to the

Court from the Indian Copyright Office, indicating that plaintiff had not properly registered its

logo under the Indian Copyright Act until April 20, 2005, more than nine months after the instant

suit was filed (see Haney Cert.[12] ¶ 18, Ex. Q), the Court questioned whether the registry

requirements of Indian copyright law were ever satisfied.[13]

In response to this Court's Order, the parties presented additional briefing on this topic.

The parties agree that although plaintiff only registered for copyright protection of the Ajit logo

with the Copyright Office of India in 2005, after the initiation of this lawsuit, Indian copyright

law is "permissive," and protects published works even when they have not been registered. (See

Pl.'s Supp. Mem. at 10 (citing cases); Defs.' Supp. Mem. at 2 (noting that the Indian Copyright

registration system is "permissive")). The parties also agree that, in general, Indian copyright law

protects copyrightable work at the time it is created, rather than at the time it is registered. (See

Pl.'s Supp. Mem. at 10; Defs.' Supp. Mem. at 2). Defendants surprisingly concede that "for the

purposes of this Summary Judgment motion, Defendants do not dispute that Plaintiff is the

owner of the Ajit logo." (Defs.' Supp. Mem. at 3). Thus, although plaintiff did not register the

Ajit logo with the Indian Copyright Office until 2005, it is undisputed that Indian law does not

require material to be registered before copyright protection attaches, and copyright protection,

---

[11]Trademark and copyright law are distinct, as is their registration process in United States. See Warner Bros., Inc. v. Dae Rim Trading, Inc., 677 F. Supp. at 760.

[12]Citations to "Haney Cert." refer to the Certification of James K. Haney, Esq., filed on February 22, 2006.

[13]Defendants also initially disputed that plaintiff properly complied with Indian copyright laws until its recent registration. (Defs.' Resp. at 8).

to the extent that it was available under Indian law, extended to this logo at the time it was

created. Similarly, the *Daily Ajit* masthead, although not registered with the Indian Copyright

Office, was protected at the time of its creation, to the extent that such protection was available

to a newspaper masthead. Indeed, defendants themselves concede that to the extent the material

is protected under Indian copyright law, plaintiff owns the copyright. (See Defs.' Supp. Mem. at

3).

Defendants, however, argue that the logo itself is not protected under Indian copyright

law, and that although plaintiff's 2005 Indian copyright registration is prima facie proof of the

facts listed in it, such registration does not create a "presumption of validity." (See id. at 2-3).

Defendants assert that plaintiff's logo fails to satisfy the basic requirements of Indian copyright

law. (See id.) In support of their claim, defendants point to a guidebook issued by the Indian

government on copyright law ("Guidebook"), indicating that "'[c]opyright does not ordinarily

protect titles by themselves . . . .'" (See id. at 3-4 (quoting Guidebook)).

Plaintiff responds that this language in the Guidebook is subject to interpretation, and

more importantly that the Guidebook does not represent Indian law. (See Pl.'s Supp. Reply

Mem. at 3-4). Plaintiff additionally asserts that the Ajit logo and Ajit masthead represent a

unique artistic design, rather than merely a single word or title. (See Pl.'s Supp. at 3). Plaintiff

cites to Indian and British cases finding a range of materials, including tables and compilations,

to be subject to copyright protection, and noting that the degree of originality required under

Indian law is "minimal." (See Pl.'s Supp. Mem. at 12-13).

Based on the information submitted by the parties, the Court finds that there is a disputed

question of material fact as to whether or not the copyright that plaintiff owns is valid under

Indian law for the relevant time period,[14] and whether an Indian court would ultimately find the Ajit logo and masthead subject to copyright protection under Indian law. However, even if plaintiff was able to demonstrate that Indian law protected its logo and masthead, plaintiff must still establish that there is a triable issue as to whether or not the copyright is protected under United States law in order to defeat defendants' motion for summary judgment.

3) Validity of Logo and Masthead Copyright Under United States Law:  Originality and Creativity

In order to determine whether the Ajit logo and masthead would be protected under United States copyright law, plaintiff must establish that it is the holder of a valid copyright. See, e.g., Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d at 260. The scope of the material subject to copyright protection is defined by United States law. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d at 89. The defendants argue that the Ajit logo and the Ajit masthead are not "copyrightable subject matter" as defined in 17 U.S.C. § 102.[15] (Defs.' Mem. at 16).

---

[14]The Court additionally notes that United States courts have in the past found copyrights valid in the United States even when they were not subject to protection in their country of creation. See Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192-93 (2d Cir. 1985) (holding that toys created by a Japanese national and first issued in Japan received copyright protection under United States law even though they warranted no copyright protection under Japanese law).

[15]Although plaintiff failed to place a notice of copyright on its logo or masthead (see Pl.'s Supp. Mem. at 14-15), works first published after March 1, 1989 need not bear a notice of copyright to attain copyright protection. Pub. L. No. 100-568, 102 Stat. 2853 (1988) (Berne Convention Implementation Act of 1988); see also Direct Mktg. of Virginia, Inc. v. E. Mishan & Sons, Inc., 753 F. Supp. 100, 104 n.8 (S.D.N.Y. 1990). Plaintiff claims that "[v]ery few, if any, *Ajit Daily* newspapers appeared in the United States from 1976 to March 1, 1989." (Pl.'s Supp.

"Copyright inheres 'in original works of authorship.'" <u>Primesource, Inc. v. Personnel</u>

<u>Resource, Inc.</u>. No. 97 CV 400, 1998 WL 543366, *3 (W.D.N.Y. Aug. 21, 1998) (citing 17

U.S.C. § 102(a)). To be subject to copyright protection, a work or element thereof must posses

"at least some minimal degree of creativity." <u>Id.</u> (quoting <u>Feist Publ., Inc. v. Rural Tel. Serv.</u>

<u>Co.</u>, 499 U.S. 340, 345 (1991)). Generally, "words and short phrases such as names, titles and

slogans" are not subject to copyright protection, 37 C.F.R. § 202.1, nor are symbols or "mere

variations of typographic ornamentation, lettering or coloring" subject to protection. <u>Id.</u> Some

courts have concluded that a one or two-word trademark is not subject to copyright protection

when the word is not original. <u>See, e.g.</u>, <u>Domsalla v. Texas Thunder</u>, No. 00 CV 2763, 2001 WL

493157, at * 2 (N.D. Tex. 2001) (holding that the phrase "'Texas Thunder' lacks the originality

required of copyright material"); <u>J. Racenstein & Co., Inc., v. Wallace</u>, No. 96 CV 9222, 1999

WL 632853, at *2 (S.D.N.Y. 1999) (holding that "Safety Core" is "at most an insubstantial

arrangement of only two words borrowed from other sources"); <u>Parham v. Pepsico, Inc.</u>, 927 F.

Supp. 177 (E.D.N.C. 1995) (finding the term "crystal" not copyrightable), <u>aff'd</u>, 86 F.3d 1151

(4th Cir. 1996); <u>see also</u> <u>Bird v. Parsons</u>, 289 F.3d 865, 881 (6th Cir. 2002) (finding the mark

"FINANCIA" lacking in originality or creativity, and noting that taking a single word from a

copyrighted work generally does not violate the rights that copyright law provides to the owner

---

Mem. at 14 (citing Singh Supp. Cert. ¶ 7)). Given this Court's finding that plaintiff in fact failed
to enter the United States market at any point (<u>see</u> March Order at 27), the lack of copyright
notice prior to March 1, 1989 on this Indian newspaper, printed in India, which apparently
requires no such notice in India (<u>see</u> Pl.'s Supp. Mem. at 10 (citing cases); Defs.' Supp. Mem. at
2 ), does not defeat plaintiff's claim. <u>See</u> <u>Troll Co. v. Uneeda Doll Co.</u>, 483 F.3d 150, 155-56
(2d Cir. 2007) (noting that the Uruguay Round Agreements Act brought the United States into
compliance with the Berne Convention by restoring copyright protection for foreign works that
had fallen into the public domain for technical reasons, such as noncompliance with legal
formalities).

of that work); Arica Institute, Inc. v. Palmer, 970 F.2d 1067, 1072 (2d Cir. 1992) (finding that the use of single words or short phrases from a copyrighted work was not infringement of that work, because "single words or short phrases . . . do not exhibit the minimal creativity required for copyright protection").

While plaintiff's use of the word "Ajit," which means "unconquerable" and is a name commonly used in India, fails to demonstrate the minimal degree of creativity that is essential to attain copyright protection, it is the stylized and colorful rendering of the Ajit logo, along with its use in the particular layout of the *Ajit Daily* masthead that is in dispute here. Defendants argue that when compared to standard Punjabi font, plaintiff's logo reflects only two minor changes involving the extension of one letter and the flattening of another. (Defs.' Mem. at 16). For plaintiff to establish a copyright infringement action, copyright originality and creativity are required. See Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345 (1991). The Supreme Court has held that "the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Id. (quotations and citations omitted). There is no "bright line" separating a work with this requisite slight amount of creativity from a work so deficient of creativity that it is not copyrightable. See Primesource, Inc. v. Personnel Resource, Inc., No. 97 CV 400, 1998 WL 543366, at *3-4 (W.D.N.Y. Aug. 21, 1998); see also John Muller & Co., Inc. v. New York Arrows Soccer Team, 802 F.2d 989, 990 (8th Cir. 1986).

Courts have found that the use of standard fonts is not protectible subject matter under United States copyright law. See Tufenkion Import\Export Ventures, Inc. v. Eistein Moomjy,

16

Inc., 338 F.3d 127 (2d Cir. 2003) (noting that generic shapes of the letter "L" as well as other more elaborate font designs over hundreds of years have fallen into the public domain); Eltra Corp. v. Ringer, 579 F.2d 294 (4th Cir. 1978) (noting that under a United States copyright regulation, "typeface is an industrial design in which the design cannot exist independently and separately as a work of art"). Other courts have found certain basic logos relying primarily on standard lettering with slight modifications are not copyrightable. See John Muller & Co., Inc. v. New York Arrows Soccer Team, 802 F.2d at 990 (affirming the finding that a logo consisting of four angled lines forming an arrow with the word "Arrows" written in cursive script below it was part of a "narrow category of works in which the create spark is utterly lacking or so trivial" that it did not warrant copyright protection); Primesource, Inc. v. Personnel Resource, Inc., 1998 WL 543366, at *3-4 (holding that where the only elements in a logo that might sustain a copyright "are the spacing of the letters and their precise shapes . . . the level of creativity inherent in such elements is *de minimus* and trivial and therefore insufficient, as a matter of law, to sustain a copyright").

However, courts have also found in some cases that while the use of a particular form of extensively used lettering is not copyrightable, the arrangement of that lettering, and the manner of presentation, including background, letter size, and spacing, combined to give the product sufficient independent authorship to warrant copyright protection. See Amplex Manufacturing Co. v. A.B.C. Plastic Fabricators, Inc., 184 F. Supp. 285, 286-87 (D.C. Pa. 1960) (finding that illustrations and lettering in a catalogue that consisted on an arrangement of Condensed Egyptian Style lettering in white against a dark green background that was "produced by photo engraving original pen-and-ink line drawing specially prepared . . . contain[ed] enough originality and

creativeness to justify protection under the Copyright Act." In the instant case, whether the Ajit logo, with its modification in color and shape from standard Punjabi font, possesses the requisite originality and creativity to warrant United States copyright protection is a close question. However, drawing all inferences in favor of plaintiff, as this Court must on this motion for summary judgment, the Court declines to grant summary judgment to either party on this issue.

Even if a jury were to determine that the *Daily Ajit* logo is not protected by United States copyright law, it could still find that plaintiff's masthead warrants protection. Courts have found, for example, that the particular layout in a magazine's cover is entitled to copyright protection as a graphic work even when none of the individual elements are themselves protectible; where plaintiff "has combined and arranged common forms to create a unique graphic design and layout[,]" "the distinctive arrangement and layout . . . is entitled to protection as a graphic work." Reader's Digest Assoc., Inc. v. Conservative Digest, Inc., 821 F.2d 800, 806 (D.C. Cir. 1987); see also Pantone, Inc. v. A.L. Friedman, Inc., 294 F. Supp. 545, 547-48 (S.D.N.Y. 1968) (finding that the combination and arrangement of color in a color matching system was entitled to protection). In a case of copyright infringement of a book cover that consisted of a photograph of the Empire State Building with the words "New York" written in a band in the upper left hand corner, a court found the cover potentially entitled to copyright protection as a graphic work sufficient to defeat a motion for summary judgment. See Bonechi v. Weisdorf, No. 95 CV 4008, 1998 WL 193246, at *3 (S.D.N.Y. April 21, 1998). Another court found that the overall design of a menu, although consisting in part of uncopyrightable photographs of food, was itself overall a copyrightable design. See Oriental Art Printing Corp. v. Goldstar Printing Corp., 175 F. Supp. 2d 542, 548 (S.D.N.Y. 2001).

In the present case, whether or not the *Daily Ajit* logo and masthead possess the minimum

quantum of creativity required by United States copyright law is a disputed question of material

fact. A reasonable juror could find that the combination of bright red coloring with the

modification of some of the lettering is sufficient to establish such creativity. Alternately, a juror

could determine that the logo is so similar to basic Punjabi fonts that it does not contain the

essential spark of originality and creativity required by United States copyright law. The same

potential outcome exists for the masthead, which, although quite basic - - consisting of the Ajit

logo, two advertising boxes, and a grey line - - could conceivably be found copyrightable.


### 4) Unauthorized Copying of Protected Work

In addition to demonstrating that it has ownership of a valid copyright, plaintiff must also

establish that defendants infringed on this copyright "by violating one of the exclusive rights that

17 U.S.C. § 106 bestows upon the copyright holder." Island Software and Computer Service,

Inc. v. Microsoft Corp., 413 F.3d at 260 (2d Cir. 2005) (quoting Lipton v. Nature Co., 71 F.3d

464, 469 (2d Cir. 1995)). Among the exclusive rights that the Copyright Act bestows upon

owners of valid copyrights is the right "to reproduce the copyrighted work in copies . . . to

prepare derivative works based on the copyrighted work . . . [and] to distribute copies . . . to the

public by sale. . . ." 17 U.S.C. § 106. Accordingly, the Court now turns to the question of

whether or not defendant engaged in "unauthorized copying of plaintiff's protected work."

Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d at 260. To establish

that the work was actually copied, the Court may rely on direct or indirect evidence, including

proof that the defendants had access to the copyrighted work and that similarities between the

two works are probative of copying. <u>See</u> <u>Hamil America Inc. v. GFI</u>, 193 F.3d 92, 99 (2d Cir. 1999), <u>cert. denied</u>, 528 U.S. 1160 (2000).

Plaintiff has asserted that defendants have copied two allegedly copyrighted works: the *Daily Ajit* logo, and the *Daily Ajit* masthead, which incorporates the *Daily Ajit* logo. It is undisputed that defendants in fact had access to both the Ajit logo and the Ajit masthead, published daily in a newspaper widely disseminated in the Punjab region of India for decades, and of which defendant Bains has acknowledged he was aware. (<u>See</u> Bains Dep. at 21-24; Pl.'s 56 Stmnt ¶ 5; Defs.' Resp. at 3). Accordingly, there is no question of fact as to whether or not defendants had access to the plaintiff's work. <u>See</u> <u>Hamil America Inc. v. GFI</u>, 193 F.3d at 99. It is likewise undisputed that defendants have used the Ajit logo in their weekly newspaper, which has been distributed to the public in a variety of venues, along with the *Ajit Weekly* website. (<u>See</u> Defs.' 56 Stmnt ¶ 10; Pl.'s 56 Stmnt ¶ 42; Defs.' Resp. at 18)). Thus, if it were determined that plaintiff held a valid copyright in the masthead and logo, then the jury would have to determine whether there was "substantial similarity" between defendants' Ajit logo and masthead and those of plaintiff. <u>See</u> <u>Boisson v. Banian, Ltd.</u>, 273 F.3d 262, 267-68 (2d Cir. 2001). If defendants' masthead and logo were substantially similar and defendants were found to have copied plaintiff's copyrighted works without authorization, there would be no question that defendants infringed upon plaintiff's exclusive rights. <u>See</u> 17 U.S.C. § 106.

To establish whether or not defendant's logo and masthead are substantially similar, the Second Circuit has articulated the "ordinary observer" test, which "queries whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." <u>Hamil America, Inc. v. GFI</u>, 193 F.3d at 100. This analysis should be guided by "the

20

notion that, 'good eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts.'" Id. at 102 (quoting Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 490 F.2d 1092, 1093 (2d Cir. 1974)).

Plaintiff's Ajit logo, with its particular letter shapes and spacing, appears to be virtually identical to that of defendant's Ajit logo. (Compare Singh Supp. Cert., Ex. A with Singh Supp. Cert., Ex. C). Plaintiff's Ajit masthead, which incorporates the logo, is, however, a closer question. A jury could determine that the Ajit logo does not have the originality and creativity required to entitle it to copyright protection under United States law, but nonetheless find that the Ajit masthead's particular layout is protectible. See supra at 18-19. Thus, the question of whether or not the Ajit mastheads are substantially similar is a necessary inquiry. While both mastheads place the Ajit logo in a similar place, and both have a grey line below the logo, there are differences in the way that advertisements are arranged in the mastheads. The *Ajit Daily* has two advertising boxes, while the *Ajit Weekly* has four advertising boxes in its masthead. Although plaintiff has attached samples of other Indian newspaper mastheads to the Supplemental Certification of Prem Singh (see Singh Supp. Cert., Ex. I), it is not clear to this Court that the layouts of the two mastheads are substantially similar, when compared to other Indian papers, such that no question of fact remains on this point. Accordingly, the question of whether the two mastheads are substantially similar remains a material fact in dispute.


CONCLUSION

Genuine issues of material fact remain in dispute as to whether or not plaintiff's logo and

masthead satisfy the requirements of Indian copyright law, whether or not they possess the requisite originality and creativity to warrant copyright protection under United States copyright law, and whether or not defendant's masthead is substantially similar to that of plaintiff's sufficient to establish that it has been copied. Accordingly, plaintiff's motion for summary judgment on its copyright claim is denied, and defendants' cross-motion for summary judgment on this claim is likewise denied.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail, and to close this case.

**SO ORDERED.**

Dated:  Brooklyn, New York
        August 14, 2007


                                        _____/s/_____
                                        Cheryl L. Pollak
                                        United States Magistrate Judge